# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 98-131-3 |
| RONALD CHAMPNEY | : | |

**SURRICK, J.**                                                  **February 13, 2024**

## MEMORANDUM

Ronald Champney entered federal custody on April 27, 2022, after being paroled from state prison, and began a 200-month federal sentence for crimes that he committed in 1997. He now brings multiple motions. First, he brings a motion under Fed. R. Crim. P. 36 requesting that his sentence be modified to reflect that it was concurrent to a state sentence that he recently completed and that he be granted credit on his federal sentence for the time he spent in state prison. ("Rule 36 Mot.," ECF No. 308, at 1.) Second, he seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that his medical conditions, advanced age, cognitive impairments, and lengthy and difficult state prison sentence justify release. ("3582 Mot.," ECF No. 304.) He also maintains that he is no longer a threat to the community and is unlikely to recidivate given his family support. Lastly, he brings a habeas motion under 22 U.S.C. § 2255, arguing that his conviction and sentence under 18 U.S.C. 924(c) should be vacated in light of *United States v. Taylor*, 596 U.S. 845 (2022). ("2255 Mot.," ECF No. 301.) For the following reasons, each motion will be denied.

## I.     BACKGROUND

In 1997, at the age of forty-six, Ronald Champney was part of a group of individuals who committed a series of violent robberies that targeted dealers in antiques, jewelry, and coins in

Pennsylvania and New Jersey.  (*See* Pre-Sentence Report, "PSR," at 5–8 (on file with Court).)

Champney was specifically involved in three of these robberies.  (*See id.* at 5–7.)  A federal

grand jury indicted Champney and four others in relation to the robberies.  (*Id.* at 4; ECF No. 1.)

On July 28, 1998, Champney pled guilty to the following: one count of conspiracy to commit

Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count 1); one count of conspiracy to

commit interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314, 371

(Count 2); one count of interstate transportation of stolen property and aiding and abetting, in

violation of 18 U.S.C. §§ 2314, 2 (Count 3); two counts of Hobbs Act robbery, or interference

with commerce by robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 1951, 2 (Counts

4 and 7); one count of use of a gun during a crime of violence and aiding and abetting, in

violation of 18 U.S.C. §§ 924(c), 2 (Count 5); and one count of possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 6).  (PSR at 1–2, 4.)  On December

18, 1998, the Honorable Herbert J. Hutton sentenced Champney to 200 months incarceration.

Specifically, Judge Hutton sentenced Champney to 140 months on Counts 1, 4, 6, and 7; 60

months on Count 2; 120 months on Count 3, all of which would run concurrently; and 60 months

on Count 5, which would run consecutively to the other sentences.  ("Judgment Order," ECF No.

100, at 3–4 (PDF Pagination); ECF No. 103 (Amended Judgment).)  Judge Hutton also ordered

that Champney's sentence in this case run "consecutively to the defendant's imprisonment under

any previous State or Federal Sentence."  (Judgment Order at 4; *see also* ECF No. 98; Rule 36

Mot. at A-14–15.)

    At the time he was sentenced in this case, Champney already had a lengthy criminal

history.  From 1969, when he was eighteen, to 1997, when he was forty-six, Champney was

convicted of twelve state criminal offenses, mostly for burglary and theft, as well a federal

offense for theft from an interstate shipment.  (PSR at 15–20.)  In addition, at the time of

sentencing in this case, Champney had been arrested and charged for three additional offenses: a

1997 theft of a truck, a 1993 attempted arson, and a 1992 murder.  (*Id.* at 20–21.)  With regard to

the murder charge, evidence showed that the wife of Roy Bensinger hired Champney to kill her

husband and agreed to pay Champney from the proceeds of Besinger's life insurance policy.

*Com. v. Champney*, 832 A.2d 403, 407 (Pa. 2003).  Champney was convicted in 1999 for the

murder, as well as other offenses, and was sentenced to death.  *Id.*  In 2003, the Pennsylvania

Supreme Court affirmed Champney's conviction and sentence.  *Id.*  A Pennsylvania trial court

later granted Champney a new trial under Pennsylvania's Post Conviction Relief Act based on a

finding of five instances of ineffective assistance of trial counsel.  *Com. v. Champney*, 65 A.3d

386, 386 (Pa. 2013) (opinion by Baer, J.).  An evenly divided Pennsylvania Supreme Court

affirmed the trial court's order.  *Id.*  After additional litigation, in 2018, Champney agreed to

plead no-contest to the murder and was sentenced to ten to twenty years in prison, a term that he

had already served.  ("Gov. Resp.," ECF No. 288, at 5; Rule 36 Mot. at A-3.)  He remained in

state custody, serving time for other convictions, until he was paroled in 2022.  (Gov. Resp. at

5–6.)  Champney then entered federal custody on April 27, 2022, to begin serving his 200-month

federal sentence in this case at FCI Hazelton.  (*Id.* at 6.)

        Champney initially filed his Motion for Compassionate Release *pro se*.  (*See* "Pro Se

Mot.," ECF No. 285.)  Pursuant to 18 U.S.C. § 3006A, we ordered that counsel be appointed to

represent Champney.  (ECF No. 293.)  Counsel thereafter filed his Habeas Motion under

28 U.S.C. § 2255, arguing that Champney's conviction and sentence under 18 U.S.C. § 924(c)

should be vacated in light of *United States v. Taylor*, 596 U.S. 845 (2022).  (2255 Mot.)  Counsel

also filed an amended Motion for Compassionate Release (3582 Mot.) and a motion under Fed. R. Crim. P. 36 ("Rule 36 Motion") to correct his sentence (Rule 36 Mot.).

Champney is currently 73 years old.  (*See* 3582 Mot., App. at 1.)  He has Type 2 diabetes and experiences chronic pain in his back and legs.  (*See id.*, App. at, e.g., 13, 17, 44, 49.) Champney also had colon cancer in the past, which required the removal of six inches of his colon.  (*Id.*, App. at 44.)  That condition is currently in remission.  (*Id.*)  He has been vaccinated for COVID-19.  (*Id.*, App. at 144.)  He currently receives regular medical care from clinicians at FCI Hazelton.  (*See id.* at 6, App. at 28.)

## II.     DISCUSSION

### A.     Rule 36 Motion

In his Rule 36 Motion, Champney requests that we clarify that his 200-month federal sentence in the instant case should run concurrently with the state sentence he completed in 2022 and grant him credit on his federal sentence for the time he spent in state prison after his federal sentence was imposed in December of 1998.  (*See* Rule 36 Mot. at 1.)  He argues that Judge Hutton's oral pronouncements at sentencing "unambiguously" indicate that Champney's sentence would run concurrently with any state sentence imposed after his federal sentencing. (*Id.* at 1, 7–8.)  This would mean that he has already completed his federal sentence, as he served more than 200 months in state prison after he was sentenced in this case.  (*See* Judgment Order at 1 (imposing Champney's federal sentence on December 17, 1998); Rule 36 Mot. at A-1–2 (indicating that Champney's state sentence began in 1999); (Gov. Resp. at 6 (stating that Champney was paroled into federal custody on April 27, 2022).)  However, the BOP determined that Champney's federal sentence should run consecutively to his state sentence.  (Rule 36 Mot.

4

at 5.)  Champney represents that administrative challenges to this determination were denied. (*Id.*)

### 1.   Legal Standard

Fed. R. Crim. P. 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."  "A court's authority under Rule 36 is limited to the correction of *clerical* errors in the judgment," that is, "a failure to accurately record a statement or action by the court or one of the parties."  *United States v. Bennett*, 423 F.3d 271, 277–78 (3d Cir. 2005) (emphasis in original) (internal quotations omitted).  "Rule 36 does not provide jurisdiction to correct an alleged error committed by a judge at sentencing, regardless of whether that correction is designed to vindicate an unstated assumption of the sentencing court."  *Id.* at 278.  Still, "the failure of a judgment and commitment order to reflect a clear pronouncement at oral sentencing regarding whether a federal sentence is either to be consecutive or concurrent to another sentence is a clerical error, which is within the ambit of Rule 36's power to correct."  *United States v. Savage*, 738 F. App'x 741, 743 (3d Cir. 2018) (citing *United States v. Chasmer*, 952 F.2d 50, 52 (3d Cir. 1991)).

### 2.   Analysis

Champney argues that Judge Hutton's oral pronouncements at sentencing clearly indicate that he ordered that Champney's federal sentence would run consecutively to his yet-to-be imposed state sentence.  (Rule 36 Mot. at 1, 7–8.)  As relevant here, Judge Hutton stated at sentencing that "[t]he term of imprisonment just imposed by this judgment shall run consecutively to the defendant's imprisonment under any *previous* State or Federal sentence." (*Id.* at A-14 (emphasis added).)  In response to a question by Champney's counsel at the time

asking whether Champney's federal sentence would run "consecutive to any sentence that he may now be serving," Judge Hutton responded "Any -- anything previous, any previous sentence, State or Federal, not anything I don't know about. I don't know about anything else so -- I thought you were asking about the consecutive part of the mandatory five-year imprisonment." (*Id.* at A-15.)  Accordingly, Judge Hutton's Judgment Order states that Champney's sentence is to run "consecutively to the defendant's imprisonment under any previous State or Federal Sentence." (Judgment Order at 4.)  Champney maintains that Judge Hutton unambiguously stated that Champney's federal sentence would run consecutively to any *previous* sentences, i.e. sentences he was already serving at the time Judge Hutton sentenced him. (*Id.* at 7.)  According to Champney, this implies that Judge Hutton specifically and unambiguously excluded any *future* sentences, i.e. those yet to be imposed at the time of his sentencing in this case, from running consecutively with Champney's federal sentence. (*Id.*)  Thus, he contends that "Judge Hutton unambiguously stated that Mr. Champney's federal sentence should not run consecutively with any future sentences and therefore, the judgment should reflect the sentence as it was announced at the sentencing hearing." (*Id.*)

However, as the Government argues, the fact is that Judge Hutton made no mention of whether any future, yet-to-be-imposed sentences would run concurrently or consecutively to the sentence he imposed. (*See* ECF No. 309 at 3–5.)  His oral pronouncements only concerned sentences Champney was already serving.  Therefore, the Judgment Order does not fail to reflect "a clear pronouncement at oral sentencing regarding whether [Champney's] federal sentence is either to be consecutive or concurrent" with the state sentence he served.  *See Savage*, 738 F. App'x at 743 (3d Cir. 2018).  There was no such "clear pronouncement."

Under 18 U.S.C. § 3584(a), which is unchanged from when Champney was sentenced in 1998, "multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  Both Judge Hutton's oral pronouncements and his Judgment Order are entirely consistent in stating nothing to alter the default presumption under § 3584(a), which dictates that Champney's federal sentence run consecutively to his later-imposed and now completed state sentence.  Even if we assume that Judge Hutton meant to indicate that Champney's federal sentence would run concurrently with future state sentences (*see* Rule 36 Mot. at 8–9), we may not use Rule 36 to "vindicate an unstated assumption of the sentencing court." *Bennett*, 423 F.3d at 278.  Accordingly, Champney's Rule 36 Motion will be denied.

### B.        Motion for Compassionate Release

We turn next to Champney's Motion for Compassionate Release.   For the foregoing reasons, this Motion will also be denied.

#### 1.   *Applicable Law*

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), the court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies.[1]  In relevant part, that statute provides that the court:

---

[1] To exhaust administrative remedies, the statute requires that a defendant first "request" that the warden of the defendant's facility file a motion for compassionate release with the court on his behalf.  Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of that request, or after 30 days has passed, whichever is earlier, may the defendant then file his own motion with the court. 18 U.S.C. § 3582(c)(1)(A).  Champney maintains that on or about September 9, 2022, he submitted a request to the warden of FCI Hazelton to file a motion on his behalf and had heard no response within 30 days, nor by the time he submitted his motion.  (Pro Se Mot. at 11 (ECF pagination).)  The Government concedes that Champney has satisfied the administrative exhaustion requirement.  (Gov. Resp. at 6.) Therefore, this requirement has been met.

may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).  The applicable policy statement here is § 1B1.13 of the Federal Sentencing Guidelines.[2]  Section 1B1.13 explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> after considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction . . .
> (2) The defendant is not a danger to the safety of any other person or to the community . . . and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).  That section goes on to define what constitutes "extraordinary and compelling reasons" for a sentence reduction.  In particular, it provides that such reasons include the existence of several medical circumstances of the defendant.  We summarize these circumstances as follows:

- (A) The defendant is suffering from a terminal illness.

- (B) The defendant is (i) suffering from a serious physical or medical condition, (ii) a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

- (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

---

[2] An amendment to § 1B1.13 promulgated by the Sentencing Commission took effect on November 1, 2023.  *See* UNITED STATES SENTENCING COMMISSION, AMENDMENTS TO THE SENTENCING GUIDELINES: APRIL 27, 2023 (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.  We refer to § 1B1.13 as most recently amended.

- (D) The defendant is at increased risk, which cannot be adequately mitigated in a timely manner, of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or an ongoing public health emergency.

*See id.*, (b)(1).  Section 1B1.13 also provides that extraordinary and compelling reasons exist if "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  *Id.*, (b)(2).  Lastly, it includes a catch-all category of extraordinary and compelling reasons categorized as "other reasons." Specifically, it provides that extraordinary and compelling reasons exist if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."[3]  *Id.*, (b)(5).

### 2.  Medical Conditions

Champney principally argues that his sentence should be reduced because he has "severe and debilitating" medical issues that have been "largely ignored by the BOP."  (3582 Mot. at 5–6.)  According to Champney, his daily movements are "dangerous and painful," he "falls several times a month," and "is always hurting."  (*Id.* at 6.)  Nevertheless, his request for a cane was denied because he did not qualify for it based on FCI Hazelton's criteria.  (*Id.*)  He also cites

---

[3] Pursuant to the November 1, 2023, amendment to § 1B1.13, an application note, which provided that what constituted "other reasons" that that were extraordinary and compelling was to be determined by the Director of the BOP, was deleted.  *See supra* note 3, at 11–12.  In light of the First Step Act's elimination of the requirement that a motion for a sentence reduction must be brought by the BOP (and not by a prisoner directly), most district courts disregarded the continued presence of the BOP's gatekeeping function in determining what constituted extraordinary and compelling reasons as "outdated" and concluded that the previous version of § 1B1.13 did not "constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

to his diabetes and asserts that he "is incapable of providing the necessary self-care that would treat his condition" because his "diet and ability to exercise are wholly out of his control in the BOP," in particular because "the prison refuses to provide the necessary tools to assist [his] mobility." (*Id.* at 6–7.)  In addition, Champney references his history with colon cancer and states that his "family history shows the seriousness of this diagnosis," as "his father died of colon cancer and his mother died of stomach cancer at age 47." (*Id.* at 6.)  Lastly, he states that "[a]s the COVID-19 pandemic illustrated, infection poses a real danger to an incarcerated, medically compromised individual such as Mr. Champney." (*Id.* at 7.)

Champney's medical conditions alone do not present extraordinary and compelling reasons to reduce his sentence.  He has not shown that his conditions "substantially diminish[] [his] ability . . . to provide self-care within the environment of [his] correctional facility," nor that any "long-term or specialized medical care [] is not being provided" to him.  *See* U.S.S.G. § 1B1.13(b)(1).  Even assuming that Champney's chronic pain constitutes a "medical condition that requires long-term or specialized medical care," *see id.*, the bare fact that he was not deemed eligible for a cane is insufficient to show that the BOP has failed to provide him necessary care. Moreover, Champney has not demonstrated that he has exhausted administrative remedies to appeal the denial of his request for a cane.  *See, e.g.*, *United States v. Salley*, No. 19-688, 2023 WL 1862289, at *4 (E.D. Pa. Feb. 9, 2023) ("compassionate release is not meant as a work around to address . . . alleged inadequate medical treatment"); *United States v. Williams*, No. 18-132, 2021 WL 2400860, at *4 (W.D. Wash. June 11, 2021) (finding that extraordinary and compelling reasons were not present to justify a motion for compassionate release in part because the prisoner "ha[d] not exercised any administrative remedies regarding" his concerns of inadequate medical care).

With regard to his diabetes, Champney has not provided evidence that the dietary options available to him at FCI Hazelton are incompatible with healthy living as a diabetic.  As Judge Charles Breyer, a longtime member of the U.S. Sentencing Commission, explained, the Sentencing Guidelines' reference to a "medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13(b)(1)(B), concerns "medical conditions that, by their nature, cannot be treated effectively in prisons.  It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate." *United States v. Miller*, No. 15-471, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021).  Diabetes is not one of the former conditions.  Courts have routinely denied requests for sentence reductions based on assertions by prisoners that their diabetes could not adequately be treated in custody. *See, e.g.*, *United States v. Cross*, No. 18-297, 2023 WL 4763723, at *3 (M.D.N.C. July 26, 2023) (finding that prisoner's diabetes did not constitute an extraordinary and compelling reason justifying his release); *United States v. James*, No. 16-233, 2021 WL 2402274, at *2 (E.D. Ark. June 11, 2021) ("[F]ederal prisons are equipped to handle serious illnesses like diabetes."); *United States v. Sandoval-Flores*, No. 99-109, 2020 WL 6562087, at *5 (D. Utah Nov. 9, 2020) (denying a motion for compassionate release and finding that the defendant had "not shown that his medical conditions [including his diabetes] substantially diminish his ability [to] provide self-care 'within the environment of a correctional facility'").

Nor has Champney presented extraordinary and compelling reasons based on his history with colon cancer or a risk of infection with COVID-19.  Champney's colon cancer is in remission.  He has presented nothing to suggest that the cancer is currently a condition that substantially diminishes his ability to provide self-care at his facility.  That his father died of the

same condition, and Champney's apparent suggestion that therefore the disease may return as a more serious threat to his life, does not change this fact.  Champney received treatment for his cancer while he was incarcerated in state prison (*see* 3582 Mot., App. at 44); it is clearly not a "medical condition[] that, by [its] nature, cannot be treated effectively in prisons."  *See Miller*, 2021 WL 2711728, at *4; *see also United States v. Taylor*, No. 09-13, 2022 WL 2751621, at *1 (E.D. Tenn. May 19, 2022) (finding that defendant's fear that his cancer, though being in remission, would return was not an extraordinary and compelling reason justifying release).

While "[c]ourts have recognized that a diabetes diagnosis increases the risk of serious complications or death from COVID-19 and have granted compassionate release to inmates suffering from the disease," *United States v. Jenkins*, No. 16-20229, 2020 WL 4734905, at *4 (E.D. Mich. Aug. 14, 2020), "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  In particular, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).  "District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release."  *United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022).  Champney has been vaccinated against COVID-19, additional boosters are available to him from the BOP, and there are currently no COVID-19 infections at FCI Hazelton.  *See Inmate COVID-19 Data*, FEDERAL BUREAU OF

PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last updated

February 12, 2024).  He therefore does not present extraordinary and compelling reasons for

compassionate release based on the risk of COVID-19.

### 3.   *Previous State Incarceration*

Champney also suggests that the time he has already spent incarcerated in state prison

justifies his release.  Specifically, he emphasizes that not only has he has spent "the majority of

his adult life behind bars, but he spent many of those [25] years on death row under

dehumanizing conditions."  (ECF No. 306 at 1.)  *See also Reid v. Wetzel*, No. 18-176, 2020 WL

8184695, at *1 (M.D. Pa. Apr. 9, 2020) (approving a settlement agreement in a suit by death row

prisoners in Pennsylvania's Department of Corrections that alleged that they were "segregated

entirely from the general prison population," were confined to their cell for 22 to 24 hours per

day, and "were commonly denied human contact for as long as 70 hours between Friday morning

and Monday morning").

Section 1B1.13 explicitly considers the time a prisoner has already served to be relevant

to whether extraordinary and compelling reasons exist under three circumstances.   These

circumstances are as follows:

- "The defendant (A) is at least 65 years old; (B) is experiencing a serious
  deterioration in physical or mental health because of the aging process; and (C)
  has served at least 10 years or 75 percent of his or her term of imprisonment,
  whichever is less."  U.S.S.G. § 1B1.13(b)(2).

- "If a defendant received an unusually long sentence and has served at least 10
  years of the term of imprisonment, a change in the law . . . may be considered in
  determining whether the defendant presents an extraordinary and compelling
  reason."  *Id.*, (b)(6).

- "The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in
  prison pursuant to a sentence imposed under 18 U.S.C. 3559(c) for the offense or
  offenses for which the defendant is imprisoned."  *Id.*, (a)(1)(B).

13

None of these provisions is explicitly relevant here. Champney has served less than two years, specifically, less than 22 months, of his 200-month federal sentence and was not sentenced under 18 U.S.C. § 3559(c).

Nevertheless, § 1B1.13 grants the court discretion to find that extraordinary and compelling reasons exist if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.*, (5). "By providing the catchall provision, the Commission recognized that it may be impossible to definitively predict what reasons may qualify as 'extraordinary and compelling.'" *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020). "Instead of trying to anticipate all circumstances, 'the Commission covered all of its bases [through the] flexible catchall provision.'" *United States v. Pollard*, No. 10-633, 2020 WL 4674126, at *4 (E.D. Pa. Aug. 12, 2020) (quoting *Rodriguez*, 451 F. Supp 3d at 399).

The length of time Champney has already served in state prison, in conjunction with the current state of his health, may constitute a combination of circumstances that are similar in gravity to the circumstances described in § 1B1.13(b)(2). Champney is currently 73 years old, eight years older than the age contemplated in paragraph (b)(2). However, "[c]ourts have found that inmates did not show a serious deterioration based on age where they suffered from multiple relatively minor or treatable conditions [such as cancer in remission, diabetes, and back pain requiring a cane] commonly caused by aging." *United States v. Holley*, No. 96-208, 2021 WL 2320394, at *6 (N.D. Ala. June 7, 2021) (collecting cases). Champney's health conditions themselves are not similar in gravity to the kinds of health conditions courts have found to constitute a "serious deterioration based on age" under paragraph (b)(2). Nonetheless, his health

14

conditions are serious.  Champey has already served more than 25 years in prison, or more than

twice the minimum of ten years contemplated in paragraph (b)(2), albeit in state rather than

federal prison.  Moreover, much of that time was served under the particularly harsh conditions

of Pennsylvania's death row.  So, while Champney's circumstances are not similar in gravity to

each element of paragraph (b)(2), when considered in their totality, it can be argued that they are

similar in gravity to all the circumstances described paragraph (b)(2).

### 4.   Sentencing Factors

That being said, even if a court finds that there exist extraordinary and compelling

reasons justifying a sentence reduction, "before granting compassionate release, a district court

must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."

*United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (cleaned up); *see also* 18 U.S.C.

§ 3582(c)(1)(A); U.S.S.G. § 1B1.13(a).  The sentencing factors courts consider include: the

"nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); the "history and

characteristics of the defendant," *id*.; and "the need for the sentence imposed . . . to reflect the

seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the

offense, . . . to afford adequate deterrence to criminal conduct, [and] to protect the public from

further crimes of the defendant," *id*., (a)(2).  Courts must also determine that the "[t]he defendant

is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

With regard to Champney's "characteristics," Champney points to his significant

cognitive impairments and the "abuse and neglect" he suffered as a child.  (3582 Mot. at 7.)

Specifically, he cites to two psychological reports.  The first is a report prepared by

neuropsychologist Dr. J. Daniel Ragland, which concluded that Champney had "organic

dysfunctions in brain development and frontal lobe function" and that "this brain dysfunction

significantly impaired Mr. Champney's reasoning and impulse control, and that this impairment reduced his capacity to conform his conduct to the requirements of the law." (*Id.* at 8, App at 212.)  Dr. Ragland also suggested that "it [was] possible that the severe motor vehicle accident that Mr. Champney's mother experienced while she was pregnant with him contributed to [] developmental delays." (*Id.*, App. at 212.)  The second report, prepared by psychiatrist Dr. Julie Kessel, concludes that Champney "grew up in an environment filled with extreme chaos, abuse, and neglect" and "is severely impaired cognitively," impairment that "can be attributed to his abusive upbringing." (*Id.* at 9, App. at 214, 219.)  While we are sympathetic to Champney's unfortunate upbringing and cognitive challenges, we agree with the Government that these facts do not "warrant reconsideration at this time of the propriety of the sentence Judge Hutton imposed, with full knowledge of Champney's history." ("Gov. Reply," ECF No. 305 at 3.)

Champney and the Government also dispute whether Champney presents a danger to the community.  Champney claims that he is a rehabilitated man who is ready to return to his family and points to several pieces of evidence to support his claim.  (*See* 3582 Mot. at 10.)  First, he notes that in the almost 25 years he spent in state prison, he received just three incident reports (two for disobeying orders and one for having prohibited matches), his last infraction was six years ago, and he has not received a behavioral infraction since entering federal prison.  (*Id.*)  Second, he cites a letter he wrote to the Pennsylvania Parole Board in which he expressed significant regret and remorse for a "long list of mistakes" and for "hurt[ing] a lot of people over [the] years." (*Id.* at 11.)  Lastly, he argues that he has a suitable release plan.  (*Id.* at 12.)  Upon release, Champney represents that he will live with his daughter, who will be able to assist him in enrolling in social programs (such as Medicare and Social Security), provide transportation, and provide additional assistance he will need in transitioning out of prison.  (*Id.* at 12.)

The Government maintains that Champney continues to present a threat to the community.  In particular, it highlights his long criminal history and the fact that his most violent offenses, the murder and violent home invasions, occurred when he was in his forties, suggesting that his criminal tendencies have not waned with age as is often the case.  (Gov. Resp. at 24.) The Government also suggests that the psychological reports, which point to Champney's challenges with impulse control and judgment, "only underline the continued danger to the community that Champney presents, even at a late age."  (Gov. Reply at 3, citing 3582 Mot. at 8, 9.)

We are satisfied that Champney is no longer a threat to the community.  Champney is in his seventies and has mobility issues due to chronic pain.  He has not shown any tendency towards violence in the last 25 years in prison.  *See United States v. Douglas*, No. 10-171, 2021 WL 214563, at *7 (D.D.C. Jan. 21, 2021) (observing in the context of a compassionate release motion that "[T]his Court cannot undo the past and is instead tasked with assessing [defendant's] <u>current</u> dangerousness.  In doing so, it must look beyond the underlying offense to his conduct while incarcerated." (emphasis in original)); *see also United States v. Jefferies*, No. 12-512, 2023 WL 5411083, at *3 (E.D. Pa. Aug. 22, 2023) ("An exemplary prison record is not a recognized reason for release.  However, it is relevant to the danger to the community and the Section 3553(a) analysis . . . ."); U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, [it] may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."). We are also persuaded that were Champney to be released, he would be placed in a supportive environment that would facilitate his reintegration into society.

Nevertheless, because Champney has only served a small percentage, about 10%, of his 200-month federal sentence, we do not believe that it would be appropriate to reduce his sentence to time served.  Courts must assure that the sentence imposed "reflect[s] the seriousness of the offense, [] promote[s] respect for the law, . . . provide[s] just punishment for the offense . . . and afford[s] adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2); *see also, e.g.*, *States v. Holmes*, 839 F. App'x 681, 682 (3d Cir. 2021) (upholding a district court's denial of a motion for compassionate release in part because the defendant had served about half of his sentence); *United States v. Cantatore*, 835 F. App'x 682, 684 (3d Cir. 2021) (same as to a defendant who had served only 40% of her sentence).  As we have already discussed, we find that Judge Hutton's sentence, as reflected in his oral pronouncements and his Judgment Order, dictates that Champney's federal sentence run consecutively to his state sentence.  Judge Hutton issued this sentence with full knowledge that Champney was being prosecuted in state court for multiple serious crimes.  (*See* ECF No. 59, "Order . . . as to Ronald Champney that the Warden of Schuylkill Cty. Prison and the U.S. Marshals for the EDPA produce before this court the body of the deft . . ."; *see also* ECF Nos. 63, 80, 93.)  In this case, Champney committed serious violent offenses that merited significant punishment, and the deterrent effect of his sentence in this case would have been significantly reduced if not eliminated if it were ordered to run concurrently with his sentence for serious state offenses.  While Champney has already served a significant prison sentence for his state offenses, the small portion of his federal sentence that he has so far served does not work "to reflect the seriousness of [his] offense, to promote respect for the law, [] to provide just punishment . . . [or] to afford adequate deterrence."  18 U.S.C. § 3553(a)(2).

Therefore, while we do not find that Champney would pose a threat to the community, because he has served a particularly small percentage of his sentence, we find that the sentencing factors in 18 U.S.C. § 3553(a) weigh against granting him compassionate release.  At this juncture, we do not believe it would be appropriate to reduce Champney's sentence to time served.  However, Champney is not precluded from bringing a new motion for compassionate release at a later stage.  *See United States v. Rodriguez*, 468 F. Supp. 3d 681, 687 (E.D. Pa. 2020).

### C.     Habeas Motion

Champney also brings a habeas motion under 28 U.S.C. § 2255.  Under that statute, a federal prisoner may seek relief from a sentence that "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  Champney argues that his conviction and sentence under 18 U.S.C. § 924(c) to 60 months imprisonment was contrary to law in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), and thus should be vacated.  For the following reasons, Champney's motion will be denied.

Under 18 U.S.C. § 924(c)(1), a defendant who "during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" must receive a sentence of at least five years "in addition to the punishment provided for such crime of violence."[4]  The statute thereafter defines a "crime of violence" as "an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the

---

[4] The version of the statute in effect at the time of the 1997 robberies was, in all respects relevant to this case, substantively identical.  *See* 18 U.S.C. § 924(c)(1) (effective Oct. 11, 1996 to Nov. 12, 1998).

person or property of another."[5]  18 U.S.C. § 924(c)(3)(A) (the "elements clause").  The "crime of violence" that Champney was convicted of that predicated his conviction under § 924(c)(1) was "Interference with commerce by robbery [Hobbs Act robbery], aiding and abetting" in violation of 18 U.S.C. § 1951 (Counts 4 and 7).[6]  (Judgment Order at 2.)  A defendant is guilty of Hobbs Act robbery if he

> in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section.

18 U.S.C. § 1951(a).  "Robbery," in turn, is defined as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

*Id.*, (b)(1).

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery was not a crime of violence and therefore a defendant's conviction for that offense could not serve as a predicate for § 924(c)(1).[7]  *See* 596 U.S. at 848, 851.  The Court reasoned that because the elements clause

---

[5] An offense also qualifies as a crime of violence under the statute if it is a felony and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  The Supreme Court has held that this part of the statute is unconstitutionally vague.  *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

[6] Federal law dictates that "[w]however commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a). The parties dispute whether Champney was actually convicted of aiding and abetting Hobbs Act robbery or Hobbs Act robbery itself.  (*See* 2255 Mot. at 8; "Gov. 2255 Resp.," ECF 302, at 3.)  We assume, for sake of argument, that Champney was convicted of aiding and abetting Hobbs Act robbery, as the issue does not affect the outcome we reach here.

[7] The Third Circuit subsequently held that completed Hobbs Act robbery constitutes a crime of violence under the elements clause.  *United States v. Stoney*, 62 F.4th 108, 112–13 (3d Cir. 2023).

defines a crime of violence as any that "has *as an element* the use, attempted use, or threatened use of physical force," it does not matter "how any particular defendant may commit the crime." *Id.* at 850 (emphasis in original).  "The only relevant question," the Court concluded, "is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.*  It then outlined that "to win a case for *attempted* Hobbs Act robbery the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end."  *Id.* at 851 (emphasis in original).  The Court held that "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property."  *Id.*  By way of example, the Court described a hypothetical would-be robber that walks into a store and is arrested before he has the chance to execute the robbery.  *Id.* at 851–52.  In that situation, the Court noted that the government could win a case for attempted Hobbs Act robbery even though the defendant did not engage in or threaten any violence.  *Id.* at 852.  It therefore concluded that attempted Hobbs Act robbery does not satisfy the elements clause.  *Id.*

Champney argues that, based on the logic in *Taylor*, aiding and abetting a Hobbs Act robbery should also not be considered a crime of violence.  (2255 Mot. at 10.)  Analogously to the theory of attempt, which requires a defendant to take a "substantial step" towards completing the crime, aiding and abetting requires a defendant to "take[] an affirmative act in furtherance of" the crime.  (*Id.* at 10–11, quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014).)  Just as taking a "substantial step" towards a crime of violence need not actually entail any actual or threatened violence, Champney maintains that taking a "affirmative act" need not either, as "a

defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense."  (*Id.*, quoting *Rosemond*, 572 U.S. at 73.)

The Government disputes this, pointing to the Third Circuit's decision in *United States v. Stevens*, 70 F.4th 653 (3d Cir. 2023).  The court there reasoned that "where the underlying substantive offense includes, as an element, the use of physical force, that same physical force is necessarily an element of aiding and abetting liability."  *Stevens*, 70 F.4th at 661–62.  Accordingly, it concluded that "because the force required for completed Hobbs Act robbery is sufficient to satisfy the elements clause . . . the force required for an aiding and abetting conviction is necessarily also sufficient."  *Id.* at 662.

The *Stevens* court could not have been clearer: "aiding and abetting a completed Hobbs Act robbery qualifies as a crime of violence under § 924(c)."  *Id.*  In so holding, it joined other circuits which have unanimously reached the same conclusion.  *Id.* (collecting cases from other circuits).  Champney argues that the Third Circuit's holding was dicta because Stevens raised only a "sufficiency-of-the-evidence" claim and did not directly dispute that aiding and abetting Hobbs Act robbery counts as a crime of violence.  (2255 Mot. at 12.)  However, Third Circuit plainly held that "[w]hile Stevens frames [his case] as a sufficiency-of-the-evidence challenge, it necessarily requires us to consider whether his conviction for Hobbs Act robbery qualifies as a valid § 924(c) predicate, even if Stevens has not framed it in those terms."  *Stevens*, 70 F.4th at 661.  Champney also argues that the *Stevens* court simply got it "wrong."  (2255 Mot. at 12.)  While "[h]e is entitled to his opinion" (Gov. 2255 Resp. at 4), we are bound by the Third Circuit's view of the issue; it is for the Supreme Court, not this Court, to decide any conflict between its precedent and the Third Circuit's.  Accordingly, Champney's Habeas Motion is denied.

III.    **CONCLUSION**

For the foregoing reason, Champney's Rule 36 Motion, Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), and Habeas Motion under 22 U.S.C. § 2255 are each denied.

An appropriate order follows.

**BY THE COURT:**

 /s/ R. Barclay Surrick
**R. BARCLAY SURRICK, J.**